UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY ALLAN ALLINO,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br><br>    Defendant. | Case No. 14-cv-02173-WHO<br><br>**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 17, 18 |

An Administrative Law Judge ("ALJ") denied disability benefits to plaintiff Timothy Allino after finding that he can perform a significant number of jobs that exist in the national economy. AR 29-30. The Appeals Council denied plaintiff's request for review and he now seeks reversal of the ALJ's finding and an immediate award of benefits or, in the alternative, a remand for a new hearing. *Id.* at 1; Mot. 11. The question before me is whether substantial evidence supports the ALJ's determination that a significant number of jobs exist that plaintiff could perform given his limitations. I conclude that the existence of approximately 350 jobs in California and 3200 jobs in the nation are not "significant," GRANT plaintiff's Motion for Summary Judgment with remand for payment of benefits, and DENY defendant's Motion for Summary Judgment.

**BACKGROUND**

Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act in January 2011. AR 17. He claims that he became disabled in January 2008, and suffers from obesity, diabetes, depression, numbness in his legs and feet, sleep apnea, and constant back pain similar to being hit "in the back with a baseball bat," which forces him to take breaks in a quarter-mile walk. *Id.* at 17, 69, 74-77, 180-88. The over-the-counter medication he takes does not alleviate his pain and he has trouble dressing and carrying a gallon of milk or a laundry basket of clothes. *Id.* at 71, 79, 81, 180. Plaintiff also claims that he does not know how to read or write more than "the basic stuff" due to his learning disability, and was in special education classes throughout school. *Id.* at 66-67. In 2010, his MRI results revealed an

annular tear in his back, after which the doctor immediately filled out a disability form allowing plaintiff to receive state disability benefits, although plaintiff never followed up with it. *Id.* at 95.

The Social Security Administration denied plaintiff's claim initially and on reconsideration. AR 104, 111. On January 23, 2013, after holding a hearing, the ALJ denied plaintiff's request for benefits.[1] *Id*. at 30. Specifically, the ALJ denied benefits after finding that, given plaintiff's residual functional capacity for sedentary work, there are two positions plaintiff could perform and that a significant number of jobs in those positions exist in the national economy. *Id.* at 29.

The ALJ's finding relied on the vocational expert's testimony at the hearing, who opined on the jobs that plaintiff could perform given his limitations:

> One is a printed circuit board assembler. The DOT code is 726.684-110. This is sedentary with an SVP 2. In the U.S., there are approximately 1,600 jobs; in the state, approximately 150 jobs; and none regionally . . . And the next one would be a printed circuit layout taper. The DOT code is 017.684-010. This is sedentary with an SVP of 2. Again in the U.S., approximately 1,600 jobs; less than 200 in the state, and no figures regionally.

*Id.* at 92-93.

The Appeals Council denied plaintiff's request for review in March 2014. *Id*. at 1. Plaintiff now moves for summary judgment, arguing that the ALJ erred in determining that a significant number of jobs exist. Pl.'s Mot. for Summ. J. [Docket No. 17]. The government opposes that motion, and moves for summary judgment contending that the ALJ properly determined that plaintiff could perform work that exists in significant numbers in the national economy. Def.'s Mot. for Summ. J. [Docket No. 18].

---

[1] The ALJ found that plaintiff satisfied the first four steps of the five-step disability analysis. The ALJ found that plaintiff did not engage in a substantial gainful activity and suffered from severe impairments, including "morbid obesity, chronic back pain secondary to lumbar spine degenerative disease and spondylosis, and organic mental disorder, an effective disorder, and sleep apnea." AR 20. The ALJ determined that plaintiff had the residual functional capacity to perform sedentary work, and that he had the ability to "lift and/or carry ten pounds frequently, sit for six hours in an eight-hour day, and stand and/or walk for two hours in an eight-hour day." *Id*. at 24. This activity, however, was limited by his need to change positions every thirty minutes. *Id.*

# LEGAL STANDARD

## I. SUMMARY JUDGMENT

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id.* The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 257 (1986).

## II. STANDARD OF REVIEW

Under 42 U.S.C. section 405(g), courts review the ALJ's decision to determine whether substantial evidence supports the ALJ's findings and if they are free of legal error. *See Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards). Substantial evidence means "'more than a mere scintilla,' but less than a preponderance." *Saelee v. Chater*, 94 F.3d 520, 521–22 (9th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (internal quotation marks and citation omitted).

When looking for substantial evidence, courts must review the record as a whole and consider adverse as well as supporting evidence. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. *See Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins*, 466

F.3d at 882 (quoting *Hammock v. Bowen,* 879 F.2d 498, 501 (9th Cir. 1989)); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

**DISCUSSION**

A claimant is "disabled" as defined by the Social Security Act if: (1) "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 1382c(a)(3)(A)-(B) (West 2004); *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012).

To determine whether a claimant is disabled, an ALJ engages in a five-step sequential analysis as required under 20 C.F.R. sections 404.1520(a)(4)(i)-(v).[2] Specifically under step five, which is at issue here, a claimant is disabled unless the Commissioner meets her burden and shows that there exist a significant number of jobs in the national economy that claimant can do. 20 C.F.R. §§ 416.920(a)(4)(v),(g); 416.960(c); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (the Commissioner bears the burden of showing the existence of significant jobs). Significant jobs in the "national economy" must exist either "in the region where such individual lives or in several regions in the country." 42 U.S.C. § 423(d)(2)(A). There is no bright-line rule for determining how many jobs are "significant" under step five in the Ninth Circuit, although "a comparison to other cases is instructive." *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

---

[2] Under 20 C.F.R. sections 404.1520(a)(4)(i)-(v), the five-step analysis begins first with determining if claimant is performing any substantial gainful activity. If so, claimant is not disabled. If there is no current substantial gainful activity, the second step requires determining the medical severity of claimant's impairments. If they pass the threshold for disability and duration, the third step requires determining if the impairments trigger a presumption of disability. If they do, claimant is disabled and receives benefits. If they do not, the fourth step requires the determination of any residual functional capacity. If such capacity allows claimant to perform past work, claimant is not disabled. If such capacity does not allow claimant to perform past work, step five requires determining whether there exists in the national economy a significant number of jobs claimant can perform. If so, claimant is not disabled. If the number of jobs is not significant, however, plaintiff is disabled and entitled to benefits.

4

Moreover, there must be more than a few "scattered", "isolated" or "very rare" jobs available. *Walker v. Mathews*, 546 F.2d 814, 820 (9th Cir. 1976); *see also Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014). Finally, even if there are not sufficient jobs in the regional economy, courts must still look to the availability of those jobs across several regions in the national economy. *Gutierrez*, 740 F.3d at 528.

### A. Jobs Within the Region of California

The ALJ found that 350 jobs that plaintiff could perform exist within the "region" of the State of California. While the State of California is a large region, the Ninth Circuit has held that "region" does not mean "immediate area," and may include an entire state, including the State of California. *Gutierrez*, 740 F.3d at 526-27. The Court explained that "[w]e discern no principled difference between decisions upholding state-wide job numbers and decisions upholding job numbers for areas within a state," and that the difference in use was attributable to vocational expert testimony, which sometimes focuses on the whole state and other times focuses on areas within a state. *Id.*; *Thomas v. Barnhart*, 278 F.3d 947, 960-61 (9th Cir. 2002) (treating Oregon as a region); *see also Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir. 1986) (rejecting argument that ALJ is required to analyze "the ratio" of jobs plaintiff could perform to the region at issue or compare the total existing light jobs to the number of light jobs the plaintiff could perform). There is no reason on the record before me why the ALJ could not consider the appropriate region for the taper and assembler positions at issue to be California.[3]

This does not mean, of course, that the size of the region is irrelevant to the analysis of whether a significant number of jobs exist in the region. Plaintiff points out that Ninth Circuit cases have considered whether sufficient "regional" jobs exist by looking to specific metropolitan areas. *See*, *e.g.*, *Beltran*, 700 F.3d at 389-90 (finding insignificant jobs existed in the Greater Metropolitan and Orange

---

[3] The *Gutierrez* Court did not find that the availability of jobs in a local area was irrelevant. Instead, the court noted that the claimant did not challenge the vocational expert's testimony regarding the number of jobs available to him in California or explore with the VE where those jobs were in relation to plaintiff, leading the district court to conclude that there was nothing in the record to suggest that the jobs available to plaintiff were "isolated" or existed in relatively few locations outside of the region where the plaintiff resided. *Id*. at 527. Therefore, based on the record in that case, the Ninth Circuit concluded that the ALJ had "sufficient latitude" to treat an entire state as the region. *Id*.

1   County area). The vocational expert who testified before the ALJ in this case also made a distinction
2   between California and an unidentified but apparently more localized region in discussing jobs
3   available to plaintiff. *See* AR 93 (testifying that the job numbers for the layout taper and board
4   assembler positions are unknown and zero, respectively, in the "region" despite there being 350
5   altogether in California).

6   I find that 350 jobs in the region of the State of California is not a significant number. A
7   review of cases in this Circuit that have considered this question is instructive. For cases that have
8   found that a significant number of jobs existed in the region, I note that in *Gutierrez*, the Ninth Circuit
9   found that 2500 jobs in California were significant. In *Yelovich v. Colvin*, 532 Fed. Appx. 700, 702
10  (9th Cir. 2013), the court in an unpublished decision found that 900 available jobs in an unspecified
11  region (but with 42,000 jobs nationally) were significant. Similarly, in *Thomas*, the court found that
12  1300 jobs in Oregon were enough. 278 F.3d at 960. Other cases suggest that a significant number
13  implies something even greater. In *Martinez*, the court found that 3750 to 4250 jobs in the Greater
14  Metropolitan Los Angeles, Orange County area were significant. 807 F.2d at 775. And in *Johnson v.*
15  *Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995), 30,000 jobs in Los Angeles County alone were
16  significant.

17  There are numerous cases that reject job totals that are more robust in the area in which the
18  applicant lived and in the State in of California. *See, e.g.*, *Beltran,* 700 F.3d at 389-90 ( 135 regional
19  jobs in the Greater Metropolitan and Orange County area were not a significant number of jobs);
20  *Vargas v. Colvin*, No. CV 13-2116-E, 2013 WL 6254784, at *2 (C.D. Cal. Dec. 4, 2013) (140 jobs in
21  the Los Angeles region were not significant); *Ochoa v. Colvin*, No. 1:12-CV-00604-SKO, 2013 WL
22  4816130, at *8 (E.D. Cal. Sept. 6, 2013) (80 jobs in Sacramento were not significant); *Valencia v.*
23  *Astrue*, No. C 11-06223 LB, 2013 U.S. Dist. LEXIS 41758, 2013 WL 1209353, at *18 (N.D. Cal. Mar.
24  25, 2013) (114 regional jobs in San Francisco Bay area and 14,082 national jobs were not significant);
25  *Coletta v. Massanari*, No. C-00-3497 BZ, 163 F. Supp. 2d 1101, 1106 (N.D. Cal. 2001) (remanding
26  because 363 jobs in the state economy were not significant).[4]

---

28  [4] The dissent in *Beltran* relied on a district court case from Arizona (which was also cited in the Ninth Circuit's decision in *Barker v. Secretary of Health & Human Services*, 882 F.2d 1474, 1479

In line with this precedent, I find that substantial evidence does not support the ALJ's determination that 350 jobs located somewhere in the State of California—neither the VE nor the ALJ identified the distribution of those jobs within California—are regionally significant.[5] This is true for three reasons. First, the Ninth Circuit has reserved significance to much higher numbers of jobs on both a regional and a statewide basis, and one court in this district concluded that 363 jobs across California were insignificant. Second, there is no evidence in the record to support a conclusion that the taper and assembler jobs are not isolated or scattered across California. Finally, the insignificance of the jobs becomes even more apparent in this case when considering the discrepancy between the ALJ's finding and the vocational expert's testimony. The expert testified that "less than 200" layout taper jobs existed in California, which means that the expert indicated there were "less than" 350 jobs in total plaintiff can perform in the region. *See* AR 93.

### B. Jobs Within Several Regions Nationally

The availability of 3200 jobs in the nation is also not significant. Defendant points out that the number of jobs in the nation in this case nearly doubles the number which the Ninth Circuit found insignificant in *Beltran*. *See* Oppo. 11; *Beltran*, 700 F.3d at 390. But no case in this Circuit has ever found a number similar to 3200 to be significant. In *Gutierrez*, the court found 25,000 jobs to be significant, but characterized that as a "close call." 740 F.3d at 529. Other cases found significance for jobs in numbers exceeding 25,000 nationally. *See*, *e.g.*, *Thomas*, 278 F.3d at 960 (622,000 jobs were significant); *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000) (125,000 jobs were significant); *see also Stokes v. Astrue*, 274 Fed. Appx. 674, 684 (10th Cir. 2008) (152,000 jobs in the nation were

---

(9th Cir. 1989)) that 125 to 240 jobs in a region could be significant. *See Beltran*, 700 F.3d at 393. However in that district court case, *Uravitch v. Heckler,* No. CIV-84-1619-PHX-PGR, 1986 U.S. Dist. LEXIS 25985, 1986 WL 83443, at *1 (D. Ariz. May 2, 1986), the region at issue was one county (Maricopa) in Arizona.

[5] The Ninth Circuit has cited—but not relied on—out of circuit cases that have found job numbers closer to 350 to be regionally significant. These cases, however, are distinguishable and not persuasive. *See Johnson v. Chater*, 108 F.3d 178, 180-81 (8th Cir. 1997) (200 jobs in Iowa were significant because claimant "received unemployment compensation during the time she claims to have been disabled" and the 200 jobs "were merely representative of a larger category of jobs [claimant] could perform[.]"); *Trimiar v. Sullivan*, 966 F.2d 1326, 1330-32 (10th Cir. 1992) (650 to 900 jobs in Oklahoma were significant where the court did "not strain at the numbers in reaching [the] conclusion" but merely looked at the ALJ's decision-making process); *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988) (500 jobs "in the region in which Jenkins live[d]" were significant).

significant); *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (10,000 jobs in the nation were significant); *Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997) (30,000 jobs in the nation were significant). Conversely, precedent suggests that numbers close to 3200 are insignificant. *See Beltran*, 700 F.3d at 390 (1680 jobs in the nation were insignificant).

District courts in this Circuit have reached similar conclusions. For example, in *Munroe v. Colvin*, No. 13-CV-03897-MEJ, 2014 WL 6660369, at *10 (N.D. Cal. Nov. 24, 2014), a judge in this District found that 1,000,000 national jobs were significant. Another judge found that 25,200 jobs were significant. *Davis v. Colvin*, No. 13-464-OP, 2014 WL 358407, at *10 (C.D. Cal. Jan. 30, 2014); *see also Ochoa*, 2013 WL 4816130, at *8-9 (19,122 jobs in the nation was a close call). In contrast, courts have found numbers closer to, but still in excess of, 3200 to be not significant. *See, e.g., Vargas*, 2013 WL 6254784, at *4 (5500 jobs across unspecified "several regions" were not significant); *Coletta*, 163 F. Supp. 2d at 1106 (4752 jobs in the nation was not significant); *Valencia*, 2013 WL 1209353, at *18 (14,082 jobs in the nation were not significant).

Defendant argues that what constitutes a significant number of jobs remains a factual determination reserved to the ALJ and that cases, like *Gutierrez*, should not be determinative given that no bright-line rule exists. Oppo. 9, 12. However, as discussed above, courts review the ALJ's factual determinations to ensure they are supported by substantive evidence. *DeLorme*, 924 F.2d at 846. And in the context of determining significance, the Ninth Circuit has itself advised that comparison to other cases is "instructive." *Beltran*, 700 F.3d at 389. Here, a broad range of instructive cases beyond just *Gutierrez*, both controlling and non-controlling, within and outside of the Ninth Circuit, indicate that 3200 jobs in the nation (and 350 in California) are not significant.[6]

**C. Remedy**

After a court finds that an ALJ erred, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v.*

---

[6] Defendant also argues that because plaintiff has failed to present evidence that the assembler and taper jobs are "isolated" or exist only in few locations outside of his region, the ALJ's determination should be affirmed. Def.'s Mot. for Summ. J. at 5. However, the issue here is not whether those jobs are "isolated" and found only in certain regions, but the broader issue of whether 350 of those jobs somewhere in California, and 3200 of them in unspecified regions of the United States are significant, which they are not.

8

*Lorion*, 470 U.S. 729, 744 (1985); *see also INS v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam). However, such rare circumstances exist and a remand for further proceedings is inappropriate where there is no material question left for the administrative agency to answer, and "it is clear from the record" that claimant "is unable to perform gainful employment in the national economy." *See Benecke v. Barnhart*, 379 F.3d 587, 594-95 (9th Cir. 2004). A remand in such cases would allow the administrative agency to answer for the second time the question or issue already resolved by the court in claimant's favor and would create "an unfair heads we win; tails, let's play again system of disability benefits adjudication" this Circuit does not allow. *See id.* (citations omitted).

While an ALJ's error does not itself establish disability and "[a] claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be," *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011), granting benefits is appropriate when "there are no outstanding issues that must be resolved before a determination of disability can be made[.]" *Benecke*, 379 F.3d at 593. In other words, remand for further proceedings is inappropriate where the ALJ's error considered in light of the record indicate that claimant is disabled. *See id.*; *Strauss*, 635 F.3d at 1138.

The circumstances in this case demand an award of benefits. First, there is no residual question left to answer by the administrative agency in order to determine if plaintiff is disabled. The ALJ already went through all five steps of the disability analysis. AR 17-30. The ALJ found, and parties do not dispute, that plaintiff did not perform substantial gainful work and has several severe impairments. *Id.* at 20. The ALJ's residual functional capacity determination – not challenged by plaintiff – found that plaintiff could perform sedentary work. However, the ALJ, with input by the VE, failed to identify jobs with sufficient numbers in the regional or national economy that plaintiff could perform consistent with the limitations the ALJ found he had. *See id.* at 29-30. Having determined that the ALJ erred in concluding that a significant amount of jobs existed, there is no material issue that the administrative agency can address on remand.

Second, the record clearly indicates that plaintiff is, in fact, disabled and entitled to benefits. Based on the record, the ALJ would have granted benefits to plaintiff but for the fifth

9

step in the analysis, namely, the finding that a significant amount of jobs existed. *See* AR 29-30. Since I reversed that finding, the only remedy left is an award of benefits. Any other remedy would "contribute to waste and delay" and would merely "delay much needed income for claimants who are unable to work and are entitled to benefits . . . ." *Benecke*, 373 F.3d at 595.

## CONCLUSION

I conclude that substantial evidence does not support the ALJ's finding that a significant number of jobs plaintiff can perform exist on either the regional level or the national level. Plaintiff's Motion for Summary Judgment is GRANTED and this matter is REMANDED to the Commissioner of Social Security for an award of benefits. Defendant's Motion for Summary Judgment is DENIED.

**IT IS SO ORDERED**.

Dated: March 19, 2015



WILLIAM H. ORRICK
United States District Judge